No. 21-11643

---

UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

---

MUSCOGEE (CREEK) NATION, et al.,

Plaintiffs-Appellants,

v.

BUFORD ROLIN, et al.,

Defendants-Appellees.

---

**Appeal from the District Court of the United States for the Middle District of Alabama, Northern Division**
**District Court No. 2:12cv1079-MHT (CSC) (Hon. Myron H. Thompson)**

---

**TRIBAL DEFENDANTS-APPELLEES' BRIEF**

---

Mark H. Reeves
**Kilpatrick Townsend & Stockton LLP**
Enterprise Mill, Suite 230
1450 Greene Street
Augusta, GA 30901
Tel: (706) 823-4206

Catherine F. Munson
**Kilpatrick Townsend & Stockton LLP**
701 Pennsylvania Ave, NW, Suite 200
Washington, D.C. 20004
Tel: (202) 824-1435

Septemeber 20, 2023

Charles A. Dauphin
**Dauphin Paris, LLP**
300 Vestavia Pkwy, Suite 3700
Birmingham, AL 35216
Tel: (205) 979-6019

*Attorneys for Defendants-Appellees*

## CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

Pursuant to Eleventh Circuit Rule 26.1-1, the undersigned counsel of record for the Appellees hereby certifies the following is a complete list of all trial judges, attorneys, persons, firms, partnerships, corporations, and other legal entities that have an interest in the outcome of this case, including subsidiaries, conglomerates, affiliates, parent corporations, any publicly held corporation that owns 10 percent of more of a party's stock, and other identifiable legal entities related to a party.

Allan, Aria – Counsel for Defendant/Appellee Auburn University

Auburn University – Defendant/Appellee

Balch & Bingham LLP – Counsel for Defendant/Appellee Auburn University

Benge, Shawn, Deputy Director of the National Park Service – Defendant/Appellee

Body, David Randall – Counsel for Defendant/Appellee Auburn University

Bryan Gantt, Amy – Defendant/Appellee

Bryan, Stephanie A. – Defendant/Appellee

Carter, Dewitt – Defendant/Appellee

Cohen, Devra R. – Counsel for Appellants

Dauphin, Charles A. – Counsel for Poarch Defendants/Appellees

Dauphin Paris, LLC – Counsel for Poarch Defendants/Appellees

The Department of the Interior – Defendant/Appellee

Dillard, McKnight, James & McElroy, LLP – Counsel for Appellants

DuBois, James J. – Counsel for Federal Defendants/Appellees

Flintco, LLC –former Defendant

Foster Garvey, P.C. – Counsel for Plaintiffs/Appellants

Gehman, David – Defendant/Appellee

Halland, Debra A., Secretary of the U.S. Department of the Interior – Defendant/Appellee

Haikey, Larry – Defendant/Appellee

Hammer, Jaime Stone – Counsel for Defendant/Appellee Auburn University

Heron, Rachel – Counsel for Federal Defendants/Appellees

Hickory Ground Tribal Town – Plaintiff/Appellant

Hollinger, Sandy – Defendant/Appellee

Jeffries, Arielle Mourrain – Counsel for Federal Defendants/Appellees

Kilpatrick Townsend & Stockton LLP – Counsel for Poarch Defendants/Appellees

King, Lauren – U.S. District Judge for the Western District of Washington and Former Counsel for Plaintiffs/Appellants

Knight, Griffin Lane – Attorney for Defendant/Appellee Auburn University

Lazarus, William B. – Attorney for Federal Defendants/Appellees

Manning, Timothy A. – Defendant/Appellee

Martin, Keith – Defendant/Appellee

McCune, Devon Lehman – Counsel for Federal Defendants/Appellees

McGhee, Brice – Defendant/Appellee

McGhee, Robert R. – Defendant/Appellee

McKnight, Stewart Davidson III – Counsel for Plaintiffs/Appellants

ii

Meckel, Charlotte – Defendant/Appellee

Mothershed, Arthur – Defendant/Appellee

Munson, Catherine F. – Counsel for Poarch Defendants/Appellees

Muscogee (Creek) Nation – Plaintiff/Appellant

Nagle, Mary Kathryn – Counsel for Plaintiffs/Appellants

Newland, Bryan, Principal Deputy Assistant Secretary of Indian Affairs – Defendant/Appellee

Poarch Band of Creek Indians – Defendant/Appellee

PCI Gaming Authority d/b/a Wind Creek Hospitality – Defendant/Appellee

Poust, Teresa E. - Defendant/Appellee

Reeves, Mark H. – Counsel for Poarch Defendants/Appellees

Rolin, Buford – Defendant/Appellee

Schwarz, Jody H. – Counsel for Federal Defendants/Appellees

Sport, Morgan McCue – Counsel for Defendant/Appellee Auburn University

Sprague, Mary Gabrielle – Counsel for Federal Defendants/Appellees

Stabler, Justin – Defendant/Appellee

Thompson, George – Plaintiff/Appellant

Thompson, Myron H. – U.S. District Judge for the Middle District of Alabama

Tullis, Eddie L. – Defendant/Appellee

United States Department of Justice – Counsel for Federal Defendants/Appellees

Villagomez, Chloe – Counsel for Plaintiffs/Appellants

Walker, Jordan Dorman, Jr. – Attorney for Defendant/Appellee Auburn University

Woodruff, Westly L. – Defendant/Appellee

None of the Poarch Band affiliated appellees are nongovernmental corporate entities. There have been no changes since the Poarch Band affiliated appellees last filed an Amended Certificate of Interested Persons.

## STATEMENT REGARDING ORAL ARGUMENT

This case involves straightforward application of judicial precedent and does not require oral argument. The district court correctly held that: (1) the Poarch Band of Creek Indians and PCI Gaming Authority have sovereign immunity from all claims; (2) all official capacity claims against the Poarch Band Tribal Officials fall within the special sovereignty interests exception to the *Ex parte Young* doctrine articulated in *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261 (1997), and are therefore barred by the Poarch Band's tribal sovereign immunity; and (3) the remainder of the case cannot proceed under Rule 19 in the absence of the Poarch Band defendants, who cannot be joined due to tribal sovereign immunity. All the information necessary to affirm the district court's ruling is set forth therein and below, rendering oral argument unnecessary.

# <u>TABLE OF CONTENTS</u>

**Page**

STATEMENT OF JURISDICTION...................................................................1

STATEMENT OF THE ISSUES......................................................................2

STATEMENT OF THE CASE........................................................................4

     I.     Course of Proceedings ................................................................5

     II.    Statement of Facts......................................................................6

     III.   The Opinion Below....................................................................8

     IV.   Standard of Review....................................................................9

SUMMARY OF THE ARGUMENT ..............................................................11

ARGUMENT AND CITATIONS OF AUTHORITY ....................................13

     I.     Tribal sovereign immunity bars all claims against PBCI. ....................13

          A.    Coeur d'Alene's special sovereignty interests exception to the Ex parte Young doctrine bars MCN's claims. .................................13

              1.    Coeur d'Alene's special sovereignty interests exception to the Young doctrine remains good and controlling law........................16

              2.    The district court correctly applied Coeur d'Alene to this case.....21

                  a.    Coeur d'Alene is not limited to submerged lands.............25

                  b.    PBCI has special sovereignty interests in the subject property. .............................................................................27

                  c.    MCN's requested relief is the functional equivalent of a quiet title. ............................................................................31

          B.    Ex parte Young cannot be used to redress past violations of law.............36

     II.    The district court correctly dismissed all claims against non-PBCI defendants pursuant to Rule 19. ........................................................................40

          A.    MCN has waived any challenge to the district court's application of Rule 19. .....................................................................................41

          B.    The district court did not abuse its discretion by citing Pimentel.............43

          C.    The district court did not abuse its discretion when applying Rule 19(b). .........................................................................................44

vi

      1.      The district court properly applied Rule 19(b) to the federal defendants. ................................................................................44

      2.      The district court properly applied Rule 19(b) to Auburn University ...................................................................................47

CONCLUSION .......................................................................................................51

CERTIFICATE OF COMPLIANCE .....................................................................53

CERTIFICATE OF SERVICE ...............................................................................54

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Access Now, Inc. v. Sw. Airlines Co.*,
    385 F.3d 1324 (11th Cir. 2004) ............................................32

*Alabama v. PCI Gaming Auth.*,
    801 F.3d 1278 (11th Cir. 2015) ........................................5, 8, 30

*Alaska v. Native Vill. of Venetie Tribal Gov't*,
    522 U.S. 520 (1998) .........................................................30

*Ash v. Landrum*,
    819 F. App'x 770 (11th Cir. 2020) ....................................42, 47

*AT&T Commc'ns v. BellSouth Telecommn's Inc.*,
    238 F.3d 636 (5th Cir. 2001) ...............................................20

*Chabad Chayil, Inc. v. Sch. Bd. of Miami-Dade Cnty.*,
    48 F.4th 1222 (11th Cir. 2022) ..............................12, 32, 42, 47

*CSC Transp. Inc. v. Bd. of Pub. Works of W.V.*,
    40 F. App'x 800 (4th Cir. 2002) ...........................................19

*Curling v. Sec. of State of Ga.*,
    761 F. App'x 927 (11th Cir. 2019) ........................................18

*DeBauche v. Trani*,
    191 F.3d 499 (4th Cir. 1999) ...............................................37

*Dine Citizens Against Ruining Our Env't v. Bureau of Indian Affairs*,
    932 F.3d 843 (9th Cir. 2019) ...........................................45, 50

*Dubuc v. Mich. Bd. of Law Exam'rs*,
    342 F.3d 610 (6th Cir. 2003) .........................................19, 20, 26

*Ex parte Young*,
    209 U.S. 123 (1908).................................................. *passim*

*Fla. Ass'n of Rehab. Facilities v. Fla. Dep't of Health & Rehab. Servs.*,
    225 F.3d 1208 (11th Cir. 2000) ...........................................37

*Fla. Wildlife Fed'n Inc. v. U.S. Army Corps of Eng'rs*,
    859 F.3d 1306 (11th Cir. 2017) .................................... *passim*

*Higdon v. Tusan*,
    746 F. App'x 805 (11th Cir. 2018) ...................................................................37

*Hollywood Mobile Ests., Ltd. v. Cypress*,
    415 F. App'x 207 (11th Cir. 2011) ...........................................................19, 26

*\*Idaho v. Coeur d'Alene Tribe of Idaho*,
    521 U.S. 261 (1997).................................................................................. *passim*

*In re Dairy Mart Convenience Stores, Inc.*,
    411 F.3d 367 (2d Cir. 2005)...........................................................................26

*Ind. Prot. & Advocacy Servs. v. Ind. Fam. & Soc. Servs. Admin.*,
    603 F.3d 365 (7th Cir. 2010) ........................................................................19

*Jacobson v. Bruning*,
    281 F. App'x 638 (8th Cir. 2008) ..............................................18, 24, 25, 34

*\*Jamul Action Comm. v. Simermeyer*,
    974 F.3d 984 (9th Cir. 2020), *cert. denied*, 142 S. Ct. 83 (2021)................... *passim*

*Lacano Invs., LLC v. Balash*,
    765 F.3d 1068 (9th Cir. 2014) ...........................................................18, 28, 31

*Lane v. Cent. Ala. Cmty. Coll.*,
    772 F.3d 1349 (11th Cir. 2014) ...........................................................19, 26

*Lee v. Anthony Lawrence Collection, LLC*,
    47 F.4th 262 (5th Cir. 2022) ...................................................................43, 45

*Lyng v. Nw. Indian Cemetery Prot. Ass'n*,
    485 U.S. 439 (1988)...............................................................................16, 29

*Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*,
    567 U.S. 209 (2012)..........................................................................32, 33, 35

*McGirt v. Oklahoma*,
    140 S. Ct. 2452 (2020)........................................................................30, 31

*Merritts v. Richards*,
    62 F.4th 764 (3d Cir. 2023) .................................................................37, 39

*Michigan v. Bay Mills Indian Cmty.*,
    572 U.S. 782 (2014)...........................................................................................29

*Muscogee (Creek) Nation v. Pruitt*,
    669 F.3d 1159 (10th Cir. 2012) ..................................................................20

*N. Arapaho Tribe v. Harnsberger*,
    697 F.3d 1272 (10th Cir. 2012) ...................................................45, 50

*Nicholl v. Att'y Gen. of Ga.*,
    769 F. App'x 813 (11th Cir. 2019) ...................................11, 37, 38, 39

*Odyssey Marine Exploration, Inc. v. Unidentified Shipwrecked Vessel*,
    657 F.3d 1159 (11th Cir. 2011) .................................................................9

*Okla. Tax Comm'n v. Citizen Band Potawatomi Indian Tribe of Okla.*,
    498 U.S. 505 (1991) ......................................................................5, 29

*Pavlock v. Holcomb*,
    532 F. Supp. 3d 685 (N.D. Ind. 2021) .................................17, 24, 34

*Republic of Philippines v. Pimentel*,
    553 U.S. 851 (2008) ................................................................. *passim*

*Rodriguez de Quijas v. Shearson/Am. Express, Inc.*,
    490 U.S. 477 (1989) .....................................................................21

*Santiago v. Honeywell Int'l, Inc.*,
    768 F. App'x 1000 (11th Cir. 2019) .................................................10

*Sapuppo v. Allstate Floridian Ins. Co.*,
    739 F.3d 678 (11th Cir. 2014) ..........................................................41

*Seneca Nation v. Hochul*,
    58 F.4th 664 (2d Cir. 2023) .............................................................28

*Sherwood v. Marchiori*,
    76 F.4th 688 (7th Cir. 2023) ............................................................37

*Summit Med. Assocs., P.C. v. Pryor*,
    180 F.3d 1326 (11th Cir. 1999) ...................................................12, 26

*Tarrant Reg'l Water Dist. v. Sevenoaks*,
    545 F.3d 906 (10th Cir. 2008) .........................................................20

*United States ex rel. Hall v. Tribal Dev. Corp.*,
    100 F.3d 476 (7th Cir. 1996) ...........................................................46

*Va. Off. for Prot. & Advocacy v. Stewart*,
    563 U.S. 247 (2011) ..............................................................17, 20, 21

*Vann v. Kempthorne*,
    534 F.3d 741 (D.C. Cir. 2008) ....................................................19, 26

x

*Verizon Maryland Inc. v. Public Service Commission of Maryland*,
    535 U.S. 635 (2002)................................................................ *passim*

*W. Mohegan Tribe & Nation v. Orange County*,
    395 F.3d 18 (2d Cir. 2004)..................................................... *passim*

*White Mtn. Apache Tribe v. Bracker*,
    448 U.S. 136 (1980)................................................................29

**Statutes**

28 U.S.C. § 1331 ........................................................................1

Archaeological Resources Protection Act (ARPA), 16 U.S.C. §§ 470aa, *et seq.* ................ *passim*

Indian Gaming Regulatory Act (IGRA), 25 U.S.C. §§ 2701, *et seq.* ........................................8, 31

National Historic Preservation Act (NHPA), 54 U.S.C. §§ 100101, *et seq.*...........................38, 40

Native American Graves Protection and Repatriation Act (NAGPRA) , 25 U.S.C.
    §§ 3001, *et seq.* .......................................................... *passim*

Poarch Band of Creek Indians Tribal Code, Title 4.....................................................30

Quiet Title Act (QTA), 28 U.S.C. § 2409a.....................................................32, 33

Religious Freedom Restoration Act (RFRA), 42 U.S.C. §§ 2000bb, *et seq.*...........................39, 40

**Rules & Regulations**

25 C.F.R. § 262.8(a)......................................................................49

43 C.F.R. § 7.35(a).......................................................................48

43 C.F.R. § 10.2(b)(1)....................................................................48

Fed. R. of Civ. P. 19......................................................... *passim*

**Other Authorities**

86 Fed. Reg. 7554, 7556 (Jan. 29, 2001) ........................................................6

Final Determination for Federal Acknowledgement of the Poarch Band of Creeks,
    49 Fed. Reg. 24083 (June 11, 1984) ........................................................6

COHEN'S HANDBOOK OF FEDERAL INDIAN LAW § 3.04 ................................................30

## STATEMENT OF JURISDICTION

The district court, as it correctly held, lacked jurisdiction over all claims against Appellees the Poarch Band of Creek Indians (the Poarch Band), PCI Gaming Authority (PCI Gaming), the Poarch Band's Tribal Historic Preservation Officer, and the members of the Poarch Band of Creek Indians Tribal Council and PCI Gaming Authority Board (the Tribal Officials) sued in their official capacities (collectively, PBCI) due to PBCI's sovereign immunity. Were PBCI not entitled to sovereign immunity, the district court would have jurisdiction pursuant to 28 U.S.C. § 1331.

This Court has appellate jurisdiction as stated in Appellants' (collectively, MCN) Statement of Jurisdiction.

## **STATEMENT OF THE ISSUES**

1.    In *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261 (1997), the Supreme Court held that suits against government officials cannot proceed under the *Ex parte Young*, 209 U.S. 123 (1908), doctrine in cases implicating special sovereignty interests, specifically including challenges to a sovereign's control over its land. Is *Coeur d'Alene*'s recognition of a special sovereignty interests exception to the *Young* doctrine still binding precedent?

2.    MCN seeks to revoke the decades long trust status of (and concomitant PBCI control and governmental authority over) the subject property, have the property placed into constructive trust for MCN's benefit, impose extraordinary restrictions on the future use of the property, and force PBCI to remove permanent improvements, return the property to a prior state preferred by MCN, and so maintain it in perpetuity. Does this relief implicate *Coeur d'Alene*'s special sovereignty interests exception?

3.    The *Ex parte Young* doctrine allows a plaintiff to circumvent sovereign immunity in certain circumstances by suing appropriate government officials in their official capacities provided that the suit seeks prospective relief to enjoin an ongoing violation of federal law. Did MCN allege ongoing violations of federal law sufficient to bring all of its asserted claims against the Tribal Officials under *Ex parte Young*?

2

4.     The district court held that MCN's claims against the non-PBCI defendants, which implicate the trust status of PBCI's reservation lands and the uses to which PBCI may put such lands, cannot proceed in equity and good conscience without PBCI and dismissed those claims pursuant to Rule 19. Was this an abuse of discretion?

## STATEMENT OF THE CASE

Alleging common law torts and violations of various federal statutes pertaining to historic preservation and religious liberty, MCN seeks declaratory and injunctive relief, *inter alia*, (1) directing the Secretary of the Interior to remove PBCI property near Wetumpka, Alabama from being held in trust by the United States for the benefit of PBCI, thereby eliminating the Poarch Band's sovereign control and regulatory authority over it, (2) placing the land in a constructive trust for the benefit of MCN, and (3) directing PBCI to remove substantial permanent improvements, restore the land to its pre-excavation, pre-construction condition, and refrain from "any further ground disturbing, clearing, grading, leveling, or construction activity" on the property. Second Am. Compl. (SAC), Dkt. 36, at 124-27.[1] In short, MCN seeks "*de facto* beneficial ownership" of lands that have been held in trust for the Poarch Band for nearly forty years. Opinion, Dkt. 36 at 984 (citation omitted).

MCN filed suit because it objects to the archeological excavation and study of the subject property—carried out by qualified experts affiliated with Auburn University—and its post-excavation development by PBCI. Despite acknowledging that the United States has held the land in trust for the Poarch Band's benefit since 1984, that "a protective covenant was placed on the property for 20 years" when the

---

[1] All record citations are to the 11th Circuit ECF-generated page numbers Appellants' Appendix (Dkt. 36) or Appellants' Brief (Dkt. 31) unless otherwise noted.

4

Poarch Band acquired first acquired fee title to it in 1980, *id.* at 66, and that the Poarch Band did not allow the archeological excavation or development of the property until "[a]fter the 20-year covenant expired in July 2000," *id.* at 76, MCN seeks to force PBCI to restore the property to its pre-excavation state and to so maintain it in perpetuity in accordance with MCN's preferences.

PBCI, as a "domestic dependent nation[] that exercise[s] inherent sovereign authority over [its] members and territories," possesses sovereign immunity from unconsented lawsuits. *Alabama v. PCI Gaming Auth.*, 801 F.3d 1278, 1287 (11th Cir. 2015) (quoting *Okla. Tax Comm'n v. Citizen Band Potawatomi Indian Tribe of Okla.*, 498 U.S. 505, 509 (1991)). PBCI asks this Court to affirm the district court's decision recognizing PBCI's sovereign immunity and preserving its "right to use what is, after all, its land." Dkt. 36 at 984 (citation omitted). PBCI further asks this Court to affirm the district court's finding that MCN's remaining claims against non-PBCI defendants cannot proceed in equity and good conscience without PBCI's involvement and its dismissal of all such claims pursuant to Rule 19.

## I.    Course of Proceedings

Its selective quotation of the district court's opinion notwithstanding, MCN accurately describes the course of proceedings before the district court.

5

## II.   Statement of Facts

The Poarch Band is a federally recognized Indian tribe. *See* Indian Entities Recognized by and Entitled to Receive Servs. from the United States Bur. of Indian Affairs, 86 Fed. Reg. 7554, 7556 (Jan. 29, 2001). The United States formally acknowledged the Poarch Band's status as a preexisting Indian tribe in 1984. *See* Final Determination for Federal Acknowledgement of the Poarch Band of Creeks, 49 Fed. Reg. 24083 (June 11, 1984). Although it has existed as a distinct political unit since the early 19th century, the Poarch Band is a successor-in-status to the Creek Nation of Alabama with which it previously shared political ties. *See id.*

In 1980, the Poarch Band acquired fee title to property in the vicinity of Wetumpka, Alabama (the subject property) that included part of the former Hickory Ground tribal town site. Dkt. 36 at 65, ₱ 61. The property was privately owned and slated for imminent commercial development before the Poarch Band acquired it. *Id.* at 134-38. In a letter to the Alabama Historical Commission seeking funding assistance for acquiring the property, the Poarch Band envisioned developing "plans … to minimize continued destruction of the archeological resources," as was already happening on adjoining parcels, and stated that, were its proposal approved, "[p]rior to any type of development of the property a scientifically sound archeological program will be conducted to mitigate or minimize effects upon the historic resources." *Id.* at 135. While the specific proposal described in the Poarch Band's

6

letter, which contemplated joint ownership of the property by the Poarch Band and MCN, *id.* at 136, was never implemented, the Poarch Band ultimately acquired sole fee ownership of the property subject to a 20-year preservation covenant. *Id.* at 65-66, ¶¶ 61-62; *id.* at 497-98. That covenant also contemplated archeological study of the property, mandating that "any archaeological data and material" recovered "be placed on permanent loan with an institution that will care for the recovered data." *Id.* at 498. In 1984, the United States took the property into trust for the benefit of the Poarch Band. *Id.* at 499-501, 968.

The protective covenant on the subject property expired on July 3, 2000. *Id.* at 72, ¶ 79; *id.* at 498. Thereafter, PBCI worked with archeologists affiliated with Auburn University to conduct a phase III archeological excavation and study of the property. *Id.* at 76, ¶¶ 100-01. MCN describes the purpose of a phase III excavation as "to record archaeological information about the site before development." *Id.*, ¶ 104. Auburn obtained permits under the Archaeological Resources Protection Act (ARPA), 16 U.S.C. §§ 470aa, *et seq.*, to perform this phase III excavation. *Id.* at 77, ¶ 108.

In October 2002, MCN wrote to PBCI and federal officials objecting to the excavation on essentially the same grounds cited in this suit. *See id.* at 370-75. In the following years, MCN and PBCI unsuccessfully attempted to resolve their differences regarding excavation and development of the property. *Id.* at 81, ¶¶ 139-

7

41. In December 2012, nearly three decades after the United States took the subject property into trust and more than 10 years after first objecting to the archeological excavation of the property, MCN filed the instant lawsuit. *See id.* at 24. MCN's requested relief includes, *inter alia*, orders (1) vitiating the Secretary's 1984 decision to take the subject property into trust and directing the Secretary to take the property out of trust, (2) imposing a constructive trust on the property for MCN's benefit, (3) permanently enjoining PBCI from "undertaking or providing assistance for any further ground disturbing, clearing, grading, leveling, or construction activity" on the property, and (4) requiring PBCI to return the property "to the condition it was in prior to construction of the casino resort and the phase III excavation." *Id.* at 124-25, 127.

Today, PBCI operates a large hotel-casino resort on the subject property. *See id.* at 85, ¶¶ 165-66; *id.* at 91, ¶ 183. PBCI's ability to engage in gaming on the property, like many other aspects of its control of and regulatory authority over the property, is contingent on its status as trust land. *Id.* at 93, ¶ 193; *see generally* Indian Gaming Regulatory Act (IGRA), 25 U.S.C. §§ 2701, *et seq.*; *PCI Gaming*, 801 F.3d at 1282-83.

## III.    The Opinion Below

The district court held that all claims against the Poarch Band are barred by tribal sovereign immunity and that PCI Gaming is also entitled to sovereign

8

immunity as an arm of the Tribe.[2] Dkt. 36 at 977. It further held that the official capacity claims against the Tribal Officials, which MCN sought to bring under the *Ex parte Young* doctrine, are barred by tribal sovereign immunity because they implicate the Poarch Band's control of its land and thus fall within the special sovereignty interests exception to the *Young* doctrine articulated in *Coeur d'Alene*. *Id.* at 982-86.

Having determined that all claims against PBCI are barred by tribal sovereign immunity, the district court found that claims against the non-PBCI defendants could not proceed in equity and good conscience without PBCI's involvement and dismissed all remaining claims pursuant to Rule 19. *Id.* at 988-93.

## IV.    Standard of Review

When reviewing dismissal of a case due to lack of subject matter jurisdiction, this Court "review[s] the district court's legal conclusions *de novo* and its factual findings for clear error." *Odyssey Marine Exploration, Inc. v. Unidentified Shipwrecked Vessel*, 657 F.3d 1159, 1169 (11th Cir. 2011) (citation omitted). The clearly erroneous standard of review for factual findings is "highly deferential"; the district court's findings must be confirmed if they are "plausible in light of the record viewed in its entirety." *Id.* (citations omitted).

---

[2] MCN does not challenge these holdings on appeal.

This Court reviews dismissal of claims on Rule 19 grounds for abuse of discretion. *Santiago v. Honeywell Int'l, Inc.*, 768 F. App'x 1000, 1003-04 (11th Cir. 2019). This Court "may affirm the district court's ruling on any basis the record supports … 'regardless of the grounds addressed, adopted or rejected by the district court.'" *Fla. Wildlife Fed'n Inc. v. U.S. Army Corps of Eng'rs*, 859 F.3d 1306, 1316 (11th Cir. 2017) (citation omitted).

## SUMMARY OF THE ARGUMENT

MCN does not contest the district court's holding that the Poarch Band and PCI Gaming are entitled to sovereign immunity from MCN's claims. It argues only that it can proceed against the Tribal Officials under the *Ex parte Young* doctrine, which allows a plaintiff to circumvent sovereign immunity in certain cases by bringing official capacity claims against appropriate government officials and seeking only prospective relief to enjoin ongoing violations of federal law. MCN's reliance on *Ex parte Young* is misplaced for two reasons.

First, the *Young* doctrine cannot be used to circumvent sovereign immunity when a claim implicates special sovereignty interests, specifically including a sovereign's control of its land. *Coeur d'Alene*, 521 U.S. at 281-83. The court below correctly held that MCN's claims implicate PBCI's special sovereignty interests and thus cannot proceed under *Ex parte Young*. Contrary to MCN's argument, the portion of the *Coeur d'Alene* opinion that adopted the special sovereignty interests doctrine remains good law and binding precedent.

Second, even if *Coeur d'Alene* were inapplicable, most of MCN's claims still would fail because they do not involve ongoing violations of federal law. Instead, they are based on alleged past violations of law. The *Young* doctrine "is inapplicable when a plaintiff seeks 'to adjudicate the legality of past conduct,'" even if the plaintiff seeks only prospective relief. *Nicholl v. Att'y Gen. of Ga.*, 769 F. App'x

813, 815 (11th Cir. 2019) (quoting *Summit Med. Assocs., P.C. v. Pryor*, 180 F.3d 1326, 1337 (11th Cir. 1999)).

After concluding that PBCI's sovereign immunity bars MCN's claims against PBCI, the district court correctly held that the case cannot proceed against the remaining defendants under Rule 19. MCN does not dispute that PBCI collectively is a required party under Rule 19(a), and it did not address the applicability of Rule 19(b) below, thereby waiving any argument on that issue. *See Chabad Chayil, Inc. v. Sch. Bd. of Miami-Dade Cnty.*, 48 F.4th 1222, 1223 (11th Cir. 2022).

Arguing Rule 19(b) for the first time on appeal, MCN does not dispute the district court's application of the first three Rule 19(b) factors as to the federal defendants. As to Auburn University, MCN erroneously argues that PBCI would not be prejudiced if MCN's claims against Auburn proceeded in PBCI's absence but does not address the second and third Rule 19(b) factors. MCN chiefly asserts that Rule 19(b)(4) prevents dismissal of MCN's claims against non-PBCI defendants because MCN would then lack an adequate remedy. This is incorrect, as this Court has recognized that a "'case may not proceed when a required-entity sovereign is not amenable to suit.'" *Fla. Wildlife*, 859 F.3d at 1320 (quoting *Republic of Philippines v. Pimentel*, 553 U.S. 851, 867 (2008)). Even aside from this bright line rule, however, the district court's application of Rule 19(b) was not an abuse of discretion.

This Court should affirm the dismissal of MCN's claims.

12

## ARGUMENT AND CITATIONS OF AUTHORITY

### I.  Tribal sovereign immunity bars all claims against PBCI.

The district court correctly held that the Poarch Band's tribal sovereign immunity bars MCN's common law and statutory claims against the Poarch Band, PCI Gaming, and the Poarch Band's Tribal Officials in their official capacities (PBCI). On appeal, MCN argues that it should be allowed to proceed with its official capacity claims against the Tribal Officials under the legal fiction articulated in *Ex parte Young*, which allows a plaintiff to circumvent sovereign immunity by bringing official capacity claims seeking only prospective declaratory or injunctive relief to stop ongoing violations of federal law. The district court correctly held that tribal sovereign immunity bars MCN's claims against the Tribal Officials because they implicate PBCI's special sovereignty interests in control of its trust land, although it erroneously concluded that all of MCN's claims fall within the purview of the *Young* doctrine in the first instance.

A.  *Coeur d'Alene's* special sovereignty interests exception to the *Ex parte Young* doctrine bars MCN's claims.

As the district court held, tribal sovereign immunity bars MCN's claims regardless of *Ex parte Young*. This is so because MCN's claims implicate the special sovereignty interests exception to the *Young* doctrine articulated in *Coeur d'Alene*.

In *Coeur d'Alene*, an Indian tribe sued the State of Idaho and various state officials seeking a declaration of its rights to exclusive use, occupancy, and

enjoyment of submerged lands within the boundaries of its reservation. 521 U.S. at 264-65. In Part III of the primary opinion, which a majority of justices joined, the Court recognized that assertion of an ongoing violation of federal law and requesting prospective relief are "ordinarily sufficient to invoke the *Young* fiction" and allow a claim to proceed against government officials despite sovereign immunity. *Id.* at 281. But, the Court explained, the tribe's suit was different because it was "the functional equivalent of a quiet title action which implicates special sovereignty interests." *Id.*

While acknowledging that the tribe had not brought a formal quiet title action, the Court found that "the declaratory and injunctive relief the Tribe seeks is close to the functional equivalent of quiet title in that substantially all benefits of ownership and control would shift from the State to the Tribe." *Id.* at 282. Also disturbing to the Court was the fact that the tribe's claim sought, "in effect, a determination that the lands in question are not even within the regulatory jurisdiction of the State" and that "[t]he requested injunctive relief would bar the State's principal officers from exercising their governmental powers … over the disputed lands and waters." *Id.* The Court concluded that if such relief were granted, "Idaho's sovereign interest in its lands and waters would be affected in a degree fully as intrusive as almost any conceivable retroactive levy upon funds in its Treasury. Under these particular and special circumstances, we find the *Young* exception inapplicable." *Id.* at 287.

14

The district court, while noting that *Coeur d'Alene* is "an 'unusual case' establishing a 'narrow exception' to *Young*," correctly held that "this case fits within that exception." Dkt. 36 at 982 (citation omitted). It found that MCN's suit "seeks to divest PCBI more or less completely of its control" over the subject property by seeking orders requiring PBCI to:

> dismantle the Wind Creek Wetumpka, restore Hickory Ground, "to the greatest extent possible, to its pre-excavation and pre-construction condition," which would include "returning the excavated cultural items to their original burial locations," abstain from "any further ground disturbing, clearing, grading, leveling, or construction activity" at Hickory Ground, and placing the land in "constructive trust for the plaintiffs as relief for Poarch's breach of its promises to the Muscogee (Creek) Nation." Beyond that, the plaintiffs' IRA claims seeks to convert Hickory Ground from reservation land held by the Interior Department in trust for PBCI into a parcel owned by the Tribe in fee. Not only would this prevent PBCI from operating a casino there, but it would transform the nature of the Tribe's relationship to Hickory Ground, changing it from one of sovereign ownership of tribal territory to an everyday property interest that might be held by a private individual or corporation.

*Id.* at 982-83 (citation omitted). Such relief, the district court concluded, "'goes to the heart of [PBCI]'s sovereign and proprietary interests' and is every bit as invasive as the relief sought in *Coeur d'Alene*." *Id.* at 983-84 (alteration by district court) (quoting *Jamul Action Comm. v. Simermeyer*, 974 F.3d 984, 996 (9th Cir. 2020), *cert. denied*, 142 S. Ct. 83 (2021)).

While MCN's requested remedies "might not literally revoke PBCI's title … they would do everything short of that, providing the plaintiffs '*de facto* beneficial

15

ownership' of the site and divesting PBCI 'of its right to use what is, after all, *its* land.'" Dkt. 36 at 984 (quoting *Lyng v. Nw. Indian Cemetery Prot. Ass'n*, 485 U.S. 439, 453 (1988)). Accordingly, the district court held, MCN's claims implicate PBCI's special sovereignty interests, MCN cannot rely on *Ex parte Young* to circumvent tribal sovereign immunity, and all claims against PBCI must be dismissed. Dkt. 36 at 986.

MCN attacks the district court's holding on two grounds. First, it argues that subsequent case law abrogated *Coeur d'Alene* and its special sovereignty interests exception. Second, it argues that even if *Coeur d'Alene* remains good law, the special sovereignty interests exception is inapplicable here. Both arguments are wrong.

> *1.* Coeur d'Alene's *special sovereignty interests exception to the* Young *doctrine remains good and controlling law.*

According to MCN, the Supreme Court abrogated *Coeur d'Alene*'s special sovereignty interests exception to the *Young* doctrine less than five years later in *Verizon Maryland Inc. v. Public Service Commission of Maryland*, 535 U.S. 635 (2002). *Verizon*, with no discussion of nor reference to special sovereignty interests, affirmed that *Ex parte Young* typically requires only "'a straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" 535 U.S. at 645 (quoting *Coeur d'Alene*, 521 U.S. at 296 (O'Connor, J., concurring in part and concurring in the judgment)). This repudiated a portion of Justice Kennedy's *Coeur d'Alene* opinion wherein two

16

justices called for a case-by-case balancing approach to *Ex parte Young*, but it did not address, much less overrule, the special sovereignty interests discussion joined by a majority of the Court. Nevertheless, MCN now argues that *Verizon* vitiated *Coeur d'Alene*'s special sovereignty interests holding. *See* Dkt. 31 at 38-39.

The Supreme Court, as well as many lower federal courts, does not share MCN's doubts about the continued vitality of *Coeur d'Alene*'s special sovereignty interests exception to the *Young* doctrine. In 2011, nine years after *Verizon*, the Court favorably cited *Coeur d'Alene* as "an application of th[e] principle" that the Court is "willing to police abuses of the [*Young*] doctrine that threaten to evade sovereign immunity." *Va. Off. for Prot. & Advocacy v. Stewart*, 563 U.S. 247, 256-57 (2011). The Court grouped *Coeur d'Alene*'s exception for actions that are "'the functional equivalent of a quiet title suit'" against a sovereign with other well-settled exceptions to the *Young* doctrine such as suits "to obtain an injunction requiring the payment of funds from the State's treasury" or those seeking "an order for specific performance of a State's contract." *Id.* (quoting *Coeur d'Alene*, 521 U.S. at 265). The *Stewart* Court's discussion of *Coeur d'Alene*'s special sovereignty interests exception wholly discredits MCN's contention that *Verizon* abrogated that exception. *See, e.g.*, *Pavlock v. Holcomb*, 532 F. Supp. 3d 685, 694 (N.D. Ind. 2021) ("In fact, several years later, the Supreme Court affirmed *Coeur d'Alene* in … *Stewart*."), *aff'd on other grounds by* 35 F.4th 581 (7th Cir. 2022), *cert. denied*, 143 S. Ct. 374 (2022).

Lower courts have continued to apply *Coeur d'Alene*'s special sovereignty interests exception post-*Verizon*. In *Jamul*, a directly on point case cited by the district court below, the Ninth Circuit recently held that *Coeur d'Alene* prevented a suit challenging the trust status of Indian lands from proceeding under *Young*. 974 F.3d at 995 (dismissing claims seeking "to extinguish or otherwise diminish the Village's beneficial interest in its federal trust land"); *see also Lacano Invs., LLC v. Balash*, 765 F.3d 1068, 1074 (9th Cir. 2014) ("*Coeur d'Alene* remains binding upon us. *Verizon* did not overrule *Coeur d'Alene*."). The Second Circuit has applied *Coeur d'Alene* post-*Verizon* to dismiss claims "raising the core issues of land, state regulatory authority, and sovereignty expressly examined by the *Coeur d'Alene* Court." *W. Mohegan Tribe & Nation v. Orange County*, 395 F.3d 18, 23 (2d Cir. 2004). The Eighth Circuit did likewise in a case involving groundwater rights. *Jacobson v. Bruning*, 281 F. App'x 638, 639 (8th Cir. 2008) (holding *Young* inapplicable "because Jacobson's suit essentially questioned the state's ownership in and authority to regulate groundwater, and thus implicated special sovereignty interests").

And still more courts, including this one, have assessed *Coeur d'Alene*'s applicability to particular facts post-*Verizon*, strongly implying that it remains binding law. *See, e.g.*, *Curling v. Sec. of State of Ga.*, 761 F. App'x 927, 934 (11th Cir. 2019) (holding, in a case involving the use of electronic voting machines, that

18

"there is nothing unusual about Plaintiffs' case that would necessitate summoning *Coeur d'Alene*"); *Lane v. Cent. Ala. Cmty. Coll.*, 772 F.3d 1349, 1351 (11th Cir. 2014) (distinguishing *Coeur d'Alene* because "this case does not involve land"); *Hollywood Mobile Ests., Ltd. v. Cypress*, 415 F. App'x 207, 208 (11th Cir. 2011) ("The *Young* doctrine does not apply where the relief requested 'implicates special sovereignty interests.'" (citing *Coeur d'Alene*, 521 U.S. at 281)); *Vann v. Kempthorne*, 534 F.3d 741, 756 (D.C. Cir. 2008) (considering and declining to extend *Coeur d'Alene*); *Dubuc v. Mich. Bd. of Law Exam'rs*, 342 F.3d 610, 617 (6th Cir. 2003) (acknowledging *Coeur d'Alene* but holding it inapplicable to a case that was "not the functional equivalent of a quiet title action"); *CSC Transp. Inc. v. Bd. of Pub. Works of W.V.*, 40 F. App'x 800, 805 (4th Cir. 2002). These opinions further undermine any contention that *Verizon* abrogated *Coeur d'Alene*.

MCN cites several opinions, including some of those referenced *supra*, that it contends disavow or at least undermine *Coeur d'Alene*. By and large, these opinions focus on Parts II.B-D of the principal *Coeur d'Alene* opinion, wherein two justices advocated a case-by-case balancing approach to applying *Young*. 521 U.S. at 279-80. Those portions of the opinion are discrete from Part III, wherein a Court majority held that the plaintiff could not proceed under *Ex parte Young* because its claim, which was "close to the functional equivalent of quiet title," implicated the state's special sovereignty interests. *Id.* at 282; *see, e.g.*, *Ind. Prot. & Advocacy Servs. v.*

19

*Ind. Fam. & Soc. Servs. Admin.*, 603 F.3d 365, 372 (7th Cir. 2010) (noting that subsequent case law has "turned away" from a case-by-case balancing approach to *Young*); *Dubuc*, 342 F.3d at 617 (distinguishing the special sovereignty interests exception adopted by a majority of the *Coeur d'Alene* Court from the minority's suggested case-by-case balancing test); *AT&T Commc'ns v. BellSouth Telecommn's Inc.*, 238 F.3d 636, 648-49 (5th Cir. 2001) (explaining that the Fifth Circuit has rejected the notion that the minority opinion in *Coeur d'Alene* changed "the traditional application of *Ex parte Young*"). These lower court opinions do not—and could not—reject *Coeur d'Alene*'s majority holding that suits challenging a sovereign's control of its land cannot proceed under the *Young* doctrine.

MCN also cites opinions from the Tenth Circuit that it contends evince a wholesale abrogation of *Coeur d'Alene*. Dkt. 31 at 40-41 (first citing *Tarrant Reg'l Water Dist. v. Sevenoaks*, 545 F.3d 906 (10th Cir. 2008); and then citing *Muscogee (Creek) Nation v. Pruitt*, 669 F.3d 1159 (10th Cir. 2012)). *Tarrant*, which notably predates *Stewart*, does question "the extent [to which] it is even appropriate to draw comparisons to *Coeur d'Alene* after *Verizon*." 545 F.3d at 913. And *Muscogee* cites other, pre-*Stewart* Tenth Circuit case law for the proposition that courts need not conduct an analysis of special sovereignty interests in every case brought pursuant to *Young*. 669 F.3d at 1167 n.4. Neither case, however, goes so far as to hold that *Coeur d'Alene*'s special sovereignty interests exception is no longer valid or that it

20

would not control a case such as this one that presents similar facts. And even if the Tenth Circuit had so held, that holding would be safely disregarded as inconsistent with *Stewart* and other precedent cited herein.

The Supreme Court's acknowledgement of *Coeur d'Alene*'s continued vitality in *Stewart*, coupled with the repeated application and analysis of the special sovereignty interests exception by this and other Courts of Appeals since *Verizon*, rebuts MCN's assertion that *Coeur d'Alene*'s majority opinion is no longer good law. Even if *Verizon* cast a shadow of doubt over the special sovereignty interests exception—which it did not—it plainly did not overrule that aspect of *Coeur d'Alene*, which remains binding on this Court. *See Rodriguez de Quijas v. Shearson/Am. Express, Inc.*, 490 U.S. 477, 484 (1989) ("If a precedent of this Court has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, the Court of Appeals should follow the case which directly controls, leaving to this Court the prerogative of overruling its own decisions."). The district court correctly considered *Coeur d'Alene*'s special sovereignty interests exception to the *Young* doctrine in deciding PBCI's motion to dismiss.

2. *The district court correctly applied* Coeur d'Alene *to this case.*

MCN next argues that if *Coeur d'Alene*'s special sovereignty interests exception remains good law, the district court nonetheless erred in applying it here because the exception is narrow and courts have limited it to the exact facts presented

21

in *Coeur d'Alene*. As the district court held, while *Coeur d'Alene*'s special sovereignty interests exception is a "narrow" one, "this case fits within" it. Dkt. 36 at 982.

The relief sought here is closely analogous that sought in *Coeur d'Alene*. *See id.* at 982-85. There, the tribal plaintiff sought relief that (1) was "close to the functional equivalent of a quiet title in that substantially all benefits of ownership and control would shift from the State to the Tribe" and (2) would "bar the State's principal officers from exercising their governmental powers and authority over the disputed lands." 521 U.S. at 282. Here, as recited *supra*, MCN would have the court remove the subject property from trust, "transform[ing] the nature of" PBCI's relationship to it "from one of sovereign ownership of tribal property to an everyday property interest that might be held by a private individual." Dkt. 36 at 983. Furthermore, MCN seeks imposition of a constructive trust over the property that would give MCN "*de facto* beneficial ownership" as well as permanent injunctions preventing PBCI from any ground disturbing, clearing, grading, leveling, or construction activity on the site and requiring PBCI to demolish and remove a multi-million dollar hotel-casino facility and restore and maintain the land as MCN wishes it to be in perpetuity. *Id.* at 982-83. Just as in *Coeur d'Alene*, the requested relief, if granted, would shift substantially all benefits of ownership and control of the

22

property from the sovereign defendant to the plaintiff while removing the subject property from the defendant's regulatory jurisdiction.

Courts have applied *Coeur d'Alene* in similar cases, with *Jamul* being directly on point. There, as here, the plaintiff "sought to extinguish or otherwise diminish [a tribal defendant's] interest in its federal trust land" by obtaining "a declaration that the Village's land 'is [not] trust land under [the Village's] government[al] control' and an injunction against further construction by the Village of a casino." 974 F.3d at 995-96 (second, third, and fourth alterations in original). The Ninth Circuit held that such remedies were "at least as invasive of the Village's sovereign and proprietary interests as those sought against Idaho in *Coeur d'Alene*" and thus had "no trouble" concluding that the claims were barred by tribal sovereign immunity and could not proceed under the *Young* fiction. *Id.* at 996.

MCN's passing attempt, in a footnote, to distinguish *Jamul* on the grounds that the plaintiff there also contested the propriety of the defendant's federal recognition, *see* Dkt. 31 at 43 n.9, is unavailing. While the *Jamul* plaintiffs did seek such additional relief, the Ninth Circuit in no way indicated that its decision hinged on that fact or that it would have reached a different conclusion had the requested relief been limited, as it was in *Coeur d'Alene*, to challenging the defendant's control of its land. *See* 974 F.3d at 995-96. Instead, the Ninth Circuit explicitly found it "clear that the Village, not the named tribal officers, is the real party in interest …

23

because the suit seeks to extinguish or otherwise diminish the Village's beneficial interest in its federal trust land." *Id.* at 995.

*Jamul* is not alone in applying the special sovereignty interests exception to cases similar but not precisely identical to *Coeur d'Alene*. In *Western Mohegan*, the Second Circuit applied *Coeur d'Alene* in a suit seeking "Indian title" to "areas currently being used as state parks, state wildlife management areas, state-managed lakes and wetlands, state historic sites," and so forth. 395 F.3d at 20. Unperturbed by the fact that the case included non-submerged lands, the Court held that the claims presented were "virtually identical" to *Coeur d'Alene*, *id.* at 21, in that the plaintiff asserted an interest that was "fundamentally inconsistent" with the sovereign's exercise of control over the lands in question and the "functional equivalent of quiet … title." *Id.* at 23. In *Jacobson*, the Eighth Circuit held that claims "essentially question[ing] the state's ownership in and authority to regulate groundwater" implicated special sovereignty interests and could not proceed under *Young* pursuant to *Coeur d'Alene*. 281 F. App'x at 639. And *Pavlock* held that *Coeur d'Alene* barred a challenge to a high-water boundary line that would "diminish [the state's] control" of lands adjacent to Lake Michigan. 532 F. Supp. 3d at 693-94. None of these cases were identical to *Coeur d'Alene*, but, like the instant case, all were similar enough to fit comfortably within the special sovereignty interests exception.

24

MCN nevertheless argues that its claims are materially distinguishable from those in *Coeur d'Alene* because (1) this case does not involve submerged lands, (2) PBCI allegedly lacks a deep historical connection to the subject property, and (3) MCN's claims supposedly are not the functional equivalent of a quiet title action. All three arguments lack merit.

a.    *Coeur d'Alene* is not limited to submerged lands.

While *Coeur d'Alene* did discuss the unique status of submerged lands, the Court did not limit its holding to such lands. Rather, the discussion of submerged lands followed the Court's conclusion that the requested relief was unavailable because it would deprive the state of "substantially all benefits of ownership and control" of its territory and that "[t]o pass this off as a judgment causing little or no offense to Idaho's sovereign authority … would be to ignore the realities of the relief the Tribe demands." 521 U.S. at 282. Only after so holding did the Court proceed to buttress its conclusion by discussing the unique constitutional status of submerged lands. *Id.* at 283. The *sine qua non* of *Coeur d'Alene* is a threat to a sovereign's control of its territory—relief that is "close to the functional equivalent of a quiet title," *id.* at 282—not the presence or absence of submerged lands in that territory. *See, e.g.*, *Jamul*, 974 F.3d at 996 (applying *Coeur d'Alene* with no discussion of submerged lands); *Jacobson*, 281 F. App'x at 639 (applying *Coeur d'Alene* to a suit involving rights to groundwater, not submerged lands); *W. Mohegan*, 395 F.3d at

25

20, 22-23 (applying *Coeur d'Alene* to a case involving submerged and non-submerged lands without distinguishing between the two).

Other case law discussing but declining to apply *Coeur d'Alene* is in accord. In *Hollywood Mobile*, for example, this Court distinguished *Coeur d'Alene* on the ground that the relief sought there "was the 'functional equivalent' of a quiet title action against the state," not because it involved submerged lands.[3] 415 F. App'x at 211 (quoting *Summit Med.*, 180 F.3d at 1340). And in *Lane*, this Court found "the special sovereignty interest is lacking [because] this case does not involve land," making no reference to submerged lands. 772 F.3d at 1351; *see also Vann*, 534 F.3d at 756 (limiting *Coeur d'Alene* to cases involving the protection of "land"); *In re Dairy Mart Convenience Stores, Inc.*, 411 F.3d 367, 372 (2d Cir. 2005) ("[T]he Court concluded in *Coeur d'Alene Tribe* that the *Ex parte Young* fiction cannot be employed where certain sovereignty interests are present, as they are when the administration and ownership of state land is threatened."); *Dubuc*, 342 F.3d at 617 (distinguishing *Coeur d'Alene* "because the present lawsuit is not the functional equivalent of a quiet title action").

---

[3] *Hollywood Mobile* further explained that the relief requested there "would not remove the land from the tribe's jurisdiction or permanently deprive the tribe of its property interests," 415 F. App'x at 211, implying that *Coeur d'Alene* would apply where, as here, a plaintiff sought such relief.

MCN cites no authority holding *Coeur d'Alene* inapplicable to suits threatening a sovereign's control over land on the grounds that the land in question is not submerged, and PBCI is aware of none. Nor would such a rule make any sense; MCN never explains why an action seeking to divest a sovereign of control of dry land would be less threatening to its authority or less offensive to its sovereignty than one addressing only submerged lands.

        b.      <u>PBCI has special sovereignty interests in the subject property.</u>

MCN next argues that its claims do not implicate any special sovereignty interests because PBCI allegedly lacks a "deeply rooted" historic connection to or sovereignty over the subject property. Dkt. 31 at 37. This is both wrong and irrelevant.

PBCI, whose members are descended from and which is a successor in interest to the Creek Nation that existed in Alabama prior to Indian removal, shares MCN's "significant historical connections to" the site from pre-removal times. *See id.* at 985-86. And PBCI's modern-day sovereignty and control over the subject property is itself not a novel development. PBCI acquired fee title to the property in 1980, and the Secretary took it into trust for PBCI's benefit in 1984, nearly forty years ago. Dkt. 36 at 968.

Regardless, MCN's argument founders because it is the threat to present sovereign control over land, not historical duration of that control, that implicates

*Coeur d'Alene*. *See* 521 U.S. at 282 ("To pass this off as a judgment causing little or no offense to Idaho's sovereign authority … would be to ignore the realities of the [requested] relief."); *id.* at 287 ("The question before us is … the relation between the sovereign lands at issue and the immunity the State asserts."). The Ninth Circuit addressed this very point in *Lacano*, where it explained that *Coeur d'Alene* "was not predicated upon the length of the state's claim to title," but rather on the tie between sovereignty and control of land. 765 F.3d at 1075. To hold otherwise would be to elevate the sovereignty interests of Delaware and Pennsylvania above those of the more recently admitted Alaska or Arizona, or to hold that tribes have greater, more substantial sovereignty over their original reservations than lands subsequently placed in trust. Such an outcome would make no legal or practical sense.

MCN's reliance on *Seneca Nation v. Hochul*, 58 F.4th 664 (2d Cir. 2023), in support of its argument is misplaced. *Hochul* involved an invalid state easement over tribal lands that were traditionally governed and owned by the tribal plaintiff, not the state. *Id.* at 673. The Second Circuit held that a challenge to the state's potential possessory interest in the easement, which specifically did not involve a challenge to regulatory control of the property, was not enough to implicate *Coeur d'Alene*. *Id.* It certainly did not hold, as MCN implies, that the applicability of *Coeur d'Alene* hinged on the historic duration of a sovereign defendant's control and governance of the property at issue.

MCN closes this section of its brief by (1) snidely referring to PBCI lacking any sovereignty interest in breaking promises it ostensibly made to MCN or refusing to carry out promises made to the federal government and (2) asserting that PBCI's sovereignty over the property is a mere function of congressional and National Park Service (NPS) indulgence. Dkt. 31 at 51-52. As to the former, PBCI claims no sovereignty interest in "breaking promises." It claims and has a sovereignty interest in continued control of its own sovereign territory—in "'its right to use what is, after all, its land.'" Dkt. 36 at 984 (quoting *Lyng*, 485 U.S. at 453). And PBCI strongly disputes the offensive assertion that its or any other tribe's sovereignty derives only from federal delegation. PBCI, like all other federally recognized Indian tribes, possesses "'inherent sovereign authority.'"[4] *Michigan v. Bay Mills Indian Cmty.*, 572 U.S. 782, 788 (2014) (quoting *Okla. Tax Comm'n*, 498 U.S. at 509). PBCI's sovereignty—and its concomitant sovereign interests in its trust lands—is not dependent on a contract with NPS or any other federal delegation.

Given MCN's surprising attempt to downplay its significance, the importance of tribal sovereignty and its connection to land status merits attention here. The Supreme Court has repeatedly recognized that "Indian tribes retain 'attributes of sovereignty over both their members *and their territory*.'" *White Mtn. Apache Tribe*

---

[4] While the exercise of that sovereignty may be subject to limitation by Congress, that is true of all tribes. *Bay Mills*, 572 U.S. at 788 (describing tribes as "domestic dependent" sovereigns).

*v. Bracker*, 448 U.S. 136, 142 (1980) (emphasis added) (citation omitted). This sovereignty includes a degree of regulatory authority over tribal lands and a corresponding limitation of state authority. *Alaska v. Native Vill. of Venetie Tribal Gov't*, 522 U.S. 520, 527 n.1 (1998) ("Generally speaking, primary jurisdiction over land that is Indian country rests with the Federal Government and the Indian tribe inhabiting it, and not with the States."); *see generally* Felix Cohen, COHEN'S HANDBOOK OF FEDERAL INDIAN LAW § 3.04, at 183, *et seq.* (Nell Jessup Newton ed. 2012). Among other things, the civil and criminal jurisdiction of the Poarch Band of Creek Indians Tribal Court, which hears cases brought under the PBCI Tribal Code ranging from domestic violence and elder or child abuse to on-reservation property and traffic offenses to civil matters, is tied to land status. *See generally* PBCI Tribal Code Title 4; *see also McGirt v. Oklahoma*, 140 S. Ct. 2452 (2020) (discussing the lack of state criminal jurisdiction over crimes committed by Indians in Indian country).[5]

Land status also has implications for sovereign immunity, another important aspect of tribal sovereignty. *PCI Gaming*, 801 F.3d at 1290-91 (holding that PBCI officials were immune from state law nuisance claims based on conduct occurring on Indian lands but would not be immune had the conduct occurred on non-trust

---

[5] The PBCI Tribal Code is published online at: https://library.municode.com/tribes_and_tribal_nations/poarch_band_of_creek_indians/codes/code_of_ordinances (last accessed Sept. 18, 2023).

lands). And numerous federal laws apply differently (or exclusively) on Indian trust lands as opposed to privately held fee lands. *See, e.g.*, 16 U.S.C. § 470cc(a) (limiting ARPA's applicability to "public lands or Indian lands"); 25 U.S.C. §§ 2701, *et seq.* (discussing IGRA's applicability to gaming "on Indian lands"); 25 U.S.C. § 3002(a) (limiting the Native American Grave Protection and Repatriation Act's (NAGPRA) applicability to items found "on Federal or tribal lands"); *see also McGirt*, 140 S. Ct. at 2480 (listing additional statutes potentially implicated by land's status as Indian country). Given the significant links between tribal sovereignty and land status, any argument that the Poarch Band has no sovereign interests in its trust lands that would be affected by MCN's requested relief is simply not credible.[6]

      c.    <u>MCN's requested relief is the functional equivalent of a quiet title.</u>

Finally, MCN erroneously asserts that *Coeur d'Alene* is distinguishable because MCN does not seek the functional equivalent of a quiet title. The SAC itself belies this argument. The district court correctly found that MCN's requested relief, summarized *supra*, would "divest PBCI more or less completely of its control" of the subject property, "transform the nature of [PBCI's] relationship" to the property,

---

[6] In any event, a suit that deprives a sovereign of control over land implicates its special sovereignty interests even if it would not inhibit the sovereign's exercise of regulatory authority. *See Lacano*, 765 F.3d at 1075; *W. Mohegan*, 395 F.3d at 23 ("[T]he Tribe's claim is fundamentally inconsistent with the State of New York's exercise of fee title over the contested areas.").

and grant MCN "'*de facto* beneficial ownership' of the site." Dkt. 36 at 982-84. Such relief is, indeed, "every bit as invasive as the relief sought in *Coeur d'Alene*." *Id.* at 984 (citing *Jamul*, 974 F.3d at 996).

MCN attempts to evade the district court's obvious conclusion by citing *Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*, 567 U.S. 209 (2012). There, the Supreme Court held that a challenge to a secretarial decision to take land into trust for an Indian tribe qualifies as an APA claim rather than a claim brought under the Quiet Title Act (QTA), 28 U.S.C. § 2409a, "because although it contest[ed] the Secretary's title, it d[id] not claim any competing interest in the" property at issue. *Id.* at 217. Accordingly, MCN argues, APA challenges to land entrustment decisions and quiet title claims "are not interchangeable," and *Coeur d'Alene* is inapplicable. Dkt. 31 at 53. MCN's reliance on *Patchak* is misplaced for several reasons.

First, MCN waived this argument by failing to advance it below. *See* Dkt. 36 at 691, 719-23. This Court "do[es] not consider arguments raised for the first time on appeal." *Chabad Chayil*, 48 F.4th at 1223 (citing *Access Now, Inc. v. Sw. Airlines Co.*, 385 F.3d 1324, 1331 (11th Cir. 2004)).

Second, unlike Patchak, MCN *does* assert a "competing interest" in the subject property. It explicitly seeks to have the property placed in constructive trust for its own benefit, to take possession of all remains and artifacts excavated from the

property, and to require the property to be restored to its preferred state per its instructions and so maintained in perpetuity. Dkt. 36 at 124-27; *id.* at 984.

Third, the *Patchak* Court drew a formal distinction between APA and QTA claims because the QTA preserves the United States' sovereign immunity for claims brought under that act that involve Indian trust lands. 567 U.S. at 215-16. Thus, the United States retained immunity if, and only if, Patchak sued under the QTA rather than the APA, and the Court was necessarily asked to make a formalistic distinction. *Coeur d'Alene*, however, was not concerned with whether a suit was formally an action to quiet title.[7] Rather, it held that a plaintiff cannot proceed under *Ex parte Young* if the requested relief is "close to the *functional equivalent* of [a] quiet title action." 521 U.S. at 282. *Coeur d'Alene* turns not on the plaintiff's stated legal theory, but on how the requested relief would affect sovereign interests—whether it would divest the sovereign of control, regulatory jurisdiction, or the right to exercise its fundamental governmental power over the disputed land. *Id.* at 270 (indicating that the "real interests" protected by sovereign immunity "are not to be sacrificed to elementary mechanics of captions and pleading"); *see id.* at 282, 287. Where the requested relief implicates these special sovereignty interests, the sovereign remains the true party in interest and "the *Young* exception [is] inapplicable." *Id.* at 287.

---

[7] Indeed, *Coeur d'Alene* noted the parties' agreement that the suit, like the one in *Patchak*, could not have proceeded as a formal quiet title action. 521 U.S. at 281.

There is no requirement that the relief include a formal quiet title in the plaintiff's name.

Opinions applying *Coeur d'Alene* confirm this. In *Jamul*, for example, the plaintiffs did not assert any ownership interest in the trust lands at issue; they simply sought to have the lands removed from trust and to enjoin further casino construction. 974 F.3d at 996. The Ninth Circuit nonetheless readily applied *Coeur d'Alene*, holding that the plaintiffs' requested remedies were "at least as invasive … as those sought … in *Coeur d'Alene*" when they included "a declaration that the Village's federal trust land is not part of its reservation and is not subject to the regulatory authority of the Village." *Id.* Other cases applying *Coeur d'Alene* likewise did not involve formal quiet title actions. *See, e.g.*, *W. Mohegan*, 395 F.3d at 22, 23 (applying *Coeur d'Alene* to a suit asserting "Indian title" that was "the functional equivalent" of a quiet title action); *Jacobson*, 281 F. App'x at 639 (applying *Coeur d'Alene* to a § 1983 action that "essentially questioned the state's ownership in and authority to regulate groundwater, and thus implicated special sovereignty interests"); *Pavlock*, 532 F. Supp. 3d at 693 (applying *Coeur d'Alene* where plaintiffs were "effectively seeking relief equivalent to a quiet title action"). Like the plaintiffs in these cases, as well as those in *Coeur d'Alene* itself, MCN seeks relief that is the functional equivalent of a quiet title action implicating a sovereign's

control of its land and thus its special sovereignty interests. No case addressing *Coeur d'Alene* has elevated form over function in the manner MCN suggests.

Fourth, even if *Patchak* were relevant, it would not save MCN's claims because MCN asserts other, non-APA claims that implicate PBCI's special sovereignty interests. MCN seeks a constructive trust over the property as a remedy for its state common law claims, *see* Dkt. 36 at 124, and it seeks orders requiring PBCI to remove structures and restore the property and substantially limiting its future use, occupancy, and enjoyment of the property as remedies for MCN's federal common law and statutory claims. *Id.* at 125-27. These remedies have obvious, significant implications for PBCI's control of the property, and thus fall within *Coeur d'Alene*'s exception to the *Young* doctrine independently of MCN's additional, APA-based claim to rescind the property's trust status. *See id.* at 984 (finding that just these items of relief would be enough to give MCN "*de facto* control" of the property).

MCN concludes its argument by baldly asserting that "[a] lawsuit that does not transfer ownership of land … does not implicate special sovereignty interests." Dkt. 31 at 54. This also misses the mark. MCN does seek to transfer title to the subject property from the United States in trust for the Poarch Band to the Poarch Band in fee—a transfer that the district court correctly observed would "change the nature of the Tribe's relationship" to the property. Dkt. 36 at 983. And in any event,

35

MCN cites no authority for the proposition that transfer of title is a prerequisite to *Coeur d'Alene*'s application. *See, e.g.*, *Jamul*, 974 F.3d at 996 (applying *Coeur d'Alene* to a suit challenging the United States' trust title); *W. Mohegan*, 395 F.3d at 23 (applying *Coeur d'Alene* even though the state would have retained fee title to the subject land if plaintiff prevailed).

The district court correctly held that the far-reaching relief requested by MCN "is every bit as intrusive as the relief sought in *Coeur d'Alene*," Dkt. 36 at 984, that MCN therefore cannot proceed under the *Young* fiction, and that tribal sovereign immunity bars MCN's claims against PBCI. *Id.* at 986. This court should affirm.

B.    *Ex parte Young* cannot be used to redress past violations of law.

Even if this Court disagrees with the district court's application of *Coeur d'Alene*, it still should affirm dismissal of the majority of MCN's claims against the Tribal Officials because they are based on alleged past violations of law and do not fall within the scope of the *Young* doctrine. Despite acknowledging that MCN's claims are mostly based on "things that happened in the past," Dkt. 36 at 979-80, the court below erroneously held that MCN's claims nevertheless fall within the scope of *Ex parte Young* because they request "forward looking and equitable" relief. *Id.*

36

at 980. Seeking prospective, equitable relief is only half the test for the *Young* doctrine.[8]

*Ex parte Young* applies only to claims "'seeking prospective equitable relief to end continuing violations of federal law.'" *Nicholl*, 769 F. App'x at 815 (quoting *Fla. Ass'n of Rehab. Facilities v. Fla. Dep't of Health & Rehab. Servs.*, 225 F.3d 1208, 1219 (11th Cir. 2000)). It "applies only when 'a violation of federal law by a state official is ongoing as opposed to cases in which federal law has been violated at one time or over a period of time in the past,'" and it "is inapplicable when a plaintiff seeks 'to adjudicate the legality of past conduct.'" *Nicholl*, 769 F. App'x at 815 (citations omitted); *see also Higdon v. Tusan*, 746 F. App'x 805, 810 (11th Cir. 2018) ("The *Young* doctrine does not permit judgments against state officers declaring that they violated federal law in the past, nor does it allow a plaintiff to adjudicate the legality of past conduct." (citation omitted)); *Sherwood v. Marchiori*, 76 F.4th 688, 697 (7th Cir. 2023) (affirming dismissal of putative *Young* claims based on past violations of law), *reh'g denied by* 2023 WL 5671673 (7th Cir. Sept. 1, 2023); *Merritts v. Richards*, 62 F.4th 764, 772 (3d Cir. 2023) (holding *Young* inapplicable where plaintiff's claims were "based on two claimed past violations of federal law"); *DeBauche v. Trani*, 191 F.3d 499, 504-05 (4th Cir. 1999) ("The *Ex*

---

[8] This argument was raised and considered below, *see* Dkt. 36 at 979-80, and this Court can affirm a district court's judgment on any basis supported by the record. *See Fla. Wildlife*, 859 F.3d at 1316.

*parte Young* exception, however, applies only when there is an ongoing violation of federal law that can be cured by prospective relief.").

*Nicholl* involved an official capacity suit against the president of a state college alleging that the plaintiff's constitutional rights were violated when he was required to complete a certain assignment, refused to do so, and thus received a lower grade. 769 F. App'x at 814-15. This Court held *Ex parte Young* inapplicable, noting that while the plaintiff suffered lingering effects of the past unlawful conduct—*i.e.*, having a lower grade on his transcript—that did "not transform a one-time past event into a continuing violation." *Id.* at 816.

Much like the plaintiff in *Nicholl*, MCN bases its claims predominantly on past, long-since completed events. These include alleged failures to: (1) obtain appropriate permits prior to excavation of the subject property in the early 2000s or to comply with the conditions of permits that were obtained (alleged as violations of ARPA, Dkt. 36 at 109-12); (2) consult with MCN in connection with that excavation or take appropriate measures to protect historic resources during the excavation and subsequent construction (alleged as violations of the National Historic Preservation Act (NHPA), 54 U.S.C. §§ 100101, *et seq.*, Dkt. 36 at 112-19); and (3) consult with or obtain the consent of MCN prior to the excavation and subsequent construction and the reinterment of excavated remains and artifacts and failure to follow appropriate procedures during excavation and construction (alleged as violations of

NAGPRA, Dkt. 36 at 101-06). Additionally, in connection with its common law claims MCN alleges that PBCI was unjustly enriched in 1980 when it acquired the property without objection from MCN and that it obtained the property under false pretenses, *id.* at 95-97, and it asserts that the long ago acts of excavation and construction themselves violated the Religious Freedom Restoration Act (RFRA), 42 U.S.C. §§ 2000bb, *et seq. Id.* at 122-24.

These allegations and the statutory and common law claims based thereon involve only past conduct, not ongoing violations of law. While MCN may continue to see the effects of these past events, that does not "transform" them "into a continuing violation." *Nicholl*, 769 F. App'x at 816; *see also Merritts*, 62 F.4th at 772 ("The lingering effects of that discrete past action do not convert it into an ongoing violation.").

The only potential ongoing violations of law alleged in the operative SAC involve PBCI's putative (1) retention of remains and artifacts excavated from the subject property and failure to prepare a final inventory or report regarding cultural items recovered from the property (alleged as violations of NAGPRA, Dkt. 36 at 103-04) and (2) operation of a hotel-casino near a site that MCN views as sacred and preventing MCN from accessing the subject property at will (alleged as violations of RFRA, *id.* at 121). While the district court cited PBCI's alleged retention of cultural items and continuing operation of the Wind Creek Wetumpka facility as

39

alleged ongoing violations, *id.* at 980, it failed to acknowledge that these putative

violations support only a portion of MCN's NAGPRA and RFRA claims and not its

remaining statutory or common law claims.

To the extent that MCN's claims against PBCI—specifically including its

common law, ARPA, and NHPA claims and portions of its NAGPRA and RFRA

claims—are based on past acts or omissions rather than ongoing violations of federal

law, they do not fall within the purview of the *Ex parte Young* doctrine at all and

could not proceed regardless of *Coeur d'Alene*. This constitutes an alternative basis

for affirming the district court's dismissal of these claims.

## II.    The district court correctly dismissed all claims against non-PBCI defendants pursuant to Rule 19.

Having held that tribal sovereign immunity required the dismissal of MCN's

claims against PBCI, the district court proceeded to dismiss MCN's remaining

claims on Rule 19 grounds. Dkt. 36 at 986-93. MCN contends that this was an abuse

of discretion as to the federal defendants and Auburn University, arguing that the

district court erred by (1) erroneously relying on inapplicable precedent, (2) failing

to accord due weight to MCN's lack of an alternative remedy, and (3) failing to

independently assess MCN's claims against Auburn. Dkt. 31 at 55-59. MCN is

incorrect.

A.    <u>MCN has waived any challenge to the district court's application of Rule 19.</u>

Rule 19 requires a two-step inquiry. First, a court must apply Rule 19(a) to determine whether an absent party is required. *Fla. Wildlife*, 859 F.3d at 1316. A party is required if it claims an interest in the subject of the action and disposing of the action in its absence could impair or impede its ability to protect that interest. *Id.* If a party is required under Rule 19(a) and cannot be joined, the court must apply Rule 19(b) to determine whether the action may proceed "'in equity and good conscience'" in the party's absence. *Id.* (quoting Rule 19(b)). Rule 19(b) identifies four factors relevant to this determination: (1) the risk of prejudice to the absent party; (2) the extent to which such prejudice could be lessened or avoided by protective measures or by shaping the relief awarded; (3) whether a judgment in the party's absence would be adequate; and (4) whether the plaintiff would have an adequate remedy if the case were dismissed. *See* Rule 19(b)(1)-(4).

MCN does not challenge on appeal the district court's finding that some representative of the Poarch Band's interests—whether the Tribe itself, PCI Gaming, or the Tribal Officials—is a required party under Rule 19(a). *See* Dkt. 36 at 988-89. It thus has waived any argument on this point. *See Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 680 (11th Cir. 2014) (recounting this Circuit's well-settled rule that failure to argue an issue on appeal constitutes waiver). Likewise, MCN does not presently make, and thus waives, any objection to the district court's finding that the

41

federal defendants cannot adequately represent PBCI's interests in this matter. Dkt. 36 at 988-89. Its arguments on appeal go only to the district court's application of *Coeur d'Alene* and Rule 19(b).

Unfortunately for MCN, it did not offer any argument below regarding Rule 19(b). Instead, it contended only that the Poarch Band and PCI Gaming are not required parties under Rule 19(a) because their interests supposedly could be represented adequately by the Tribal Officials or possibly the federal defendants. *See* Dkt. 36 at 788-92; *id.* at 989. Having failed to address Rule 19(b) below, MCN has waived the right to do so here.[9] *See Chabad Chayil*, 48 F.4th at 1233; *Ash v. Landrum*, 819 F. App'x 770, 773 (11th Cir. 2020) ("[L]egal theories and arguments not raised squarely before the district court cannot be broached for the first time on appeal." (citation omitted)). By failing to argue Rule 19(b) below and failing to argue Rule 19(a) on appeal, MCN has waived any argument regarding the district court's application of Rule 19.[10] This alone suffices to affirm the district court's Rule 19 ruling.

---

[9] While the district court independently addressed each Rule 19(b) factor in its thorough opinion, *see* Dkt. 31 at 990-93, that does not change the fact that MCN failed to argue Rule 19(b) below. *See id.* at 788-92.

[10] MCN does preserve its argument that the district court improperly dismissed MCN's official capacity claims against the Tribal Officials, whom MCN contends would adequately represent PBCI's interests if they remained in the case. Dkt. 31 at 54-55. As discussed *supra*, however, the district court properly applied *Coeur d'Alene*'s special sovereignty interests exception to dismiss those claims.

42

B.    The district court did not abuse its discretion by citing *Pimentel*.

Putting aside its fatal waivers, MCN's Rule 19 arguments fail on the merits.

MCN first asserts that the district court abused its discretion by following the

Supreme Court's guidance in *Pimentel*. As recounted by the district court, *Pimentel*

held that (1) a "'case may not proceed when a required-entity sovereign is not

amenable to suit'" and (2) "'where sovereign immunity is asserted, and the claims

of the sovereign are not frivolous, dismissal of the action must be ordered where

there is a potential for injury to the interests of the absent sovereign.'" Dkt. 36 at 991

(quoting 553 U.S. at 867). MCN contends that *Pimentel* is irrelevant and that the

district court's reliance on it was an abuse of discretion because *Pimentel* involved

foreign rather than tribal sovereign immunity.

While *Pimentel* did involve foreign sovereign immunity, its reasoning is not

limited to that context. *See* 553 U.S. at 867 (citing cases involving federal—not

foreign—sovereign immunity to support its central holding). Indeed, this Court has

previously considered and rejected a similar effort to cabin *Pimentel*, noting that

while "[t]he sovereign in question in *Pimentel* was foreign … the Court's reasoning

regarding the application of Rule 19(b) appears just as applicable to the context of

domestic federal-state relationships insofar as immunity from private suit is

concerned." *Fla. Wildlife*, 859 F.3d at 1318 n.9. The same is true in the context of

tribal sovereign immunity. *See, e.g.*, *Lee v. Anthony Lawrence Collection, LLC*, 47

43

F.4th 262, 267-68 (5th Cir. 2022) (citing *Pimentel* and case law discussing tribal sovereign immunity in a case applying Rule 19 to a state sovereign), *cert. denied*, 143 S. Ct. 1054 (2023).

But even if *Pimentel*'s reasoning did not transfer directly to the context of tribal sovereign immunity, the district court did not rotely cite *Pimentel* and stop its analysis (although it could have done so). Instead, it proceeded, despite MCN's own failure to do so, to independently examine the applicability of each factor delineated in Rule 19(b). Dkt. 36 at 991-93. That well-reasoned, independent analysis further undercuts MCN's argument that the district court abused its discretion by relying on *Pimentel*.

## C.   The district court did not abuse its discretion when applying Rule 19(b).

MCN finally argues that the district court's application of the Rule 19(b) factors itself amounted to an abuse of discretion. These arguments, in addition to being waived, are unavailing.

### 1. The district court properly applied Rule 19(b) to the federal defendants.

With respect to the federal defendants, MCN explicitly concedes that the first Rule 19(b) factor—likely prejudice to PBCI if the case were to proceed in its absence—weighs in favor of dismissal. Dkt. 31 at 57. And it fails to address in its brief, and thus further waives any objection to, the district court's findings that the Rule 19(b)(2) and (3) factors also support dismissal of MCN's claims against the

federal defendants because it would be impossible to shape relief against those defendants to limit prejudice to PBCI or to grant adequate relief in PBCI's absence. Dkt. 36 at 991-93; Dkt. 31 at 57-59.

MCN thus is left to argue only that the district court abused its discretion by finding that the combined weight of the first three Rule 19(b) factors supporting dismissal is outweighed by the fourth factor—*i.e.*, that dismissal of MCN's claims could leave it without an adequate remedy. But this is a routine result when an absent sovereign cannot be joined due to sovereign immunity. *See Pimentel*, 553 U.S. at 872 (holding that prejudice to parties left without a remedy "is outweighed by prejudice to the absent entities invoking sovereign immunity"); *Fla. Wildlife*, 859 F.3d at 1320 (citing *Pimentel* in holding that lack of an alternative remedy could not overcome the weight of other factors supporting dismissal of claims that could prejudice an absent, immune sovereign); *see also Lee*, 47 F.4th at 268 (holding that a suit must be dismissed under Rule 19(b) where a necessary party is immune from suit); *Dine Citizens Against Ruining Our Env't v. Bureau of Indian Affairs*, 932 F.3d 843, 857 (9th Cir. 2019) ("[T]here is a 'wall of circuit authority' in favor of dismissing actions in which a necessary party cannot be joined due to tribal sovereign immunity—'virtually all the cases to consider the question appear to dismiss under Rule 19 regardless of whether [an alternate] remedy is available.'" (second alteration in original) (citation omitted)); *N. Arapaho Tribe v. Harnsberger*,

45

697 F.3d 1272, 1283-84 (10th Cir. 2012) (affirming Rule 19 dismissal for failure to join an immune tribe even though it left plaintiff "with no remedy at all, let alone an adequate one"); *United States ex rel. Hall v. Tribal Dev. Corp.*, 100 F.3d 476, 480 (7th Cir. 1996) ("A plaintiff's inability to seek relief, however, does not automatically preclude dismissal, particularly where that inability results from a tribe's exercise of its right to sovereign immunity.").

Once again, *Jamul* is directly on point. There, after holding that *Coeur d'Alene* prevented the plaintiffs from using *Ex parte Young* to challenge the trust status of Indian lands by suing tribal officials, the Ninth Circuit dismissed corresponding claims against federal officials under Rule 19. *Jamul*, 974 F.3d at 996-98. As the Ninth Circuit explained, "[t]he balancing of equitable factors under Rule 19(b) almost always favors dismissal when a tribe cannot be joined due to tribal sovereign immunity," and claims going "directly to the Village's most important interests [are] no exception." *Id.* at 998. The same is true here.

The court below followed a well-trodden path in finding that MCN's lack of an alternative remedy did not outweigh the other Rule 19(b) factors supporting dismissal of MCN's claims against the federal defendants. It certainly did not abuse its discretion.

46

2. *The district court properly applied Rule 19(b) to Auburn University.*

MCN's Rule 19(b) argument regarding its claims against Auburn is more extensive but no more persuasive. It first emphasizes that "the District Court's Rule 19 analysis contains no mention of Auburn University or the Nation's claims against Auburn University." Dkt. 31 at 57. What MCN implies is an egregious oversight has a simple explanation: MCN made no mention of Auburn in its Rule 19 argument below. Dkt 36 at 788-92. Having failed to address Rule 19's implications for its claims against Auburn below, MCN has waived any argument on that issue on appeal. *See Chabad Chayil*, 48 F.4th at 1233; *Ash*, 819 F. App'x at 773.

Moreover, MCN's SAC explicitly minimized Auburn's role in the case, stating that "Auburn is listed as a Defendant *solely to the extent* that this Court enters orders concerning the possession, custody, control, or relocation of the cultural items at issue." Dkt. 36 at 60, ¶ 42. Given this disclaimer and the fact that the court below entered no such order on MCN's claims against other defendants, the district court would not have abused its discretion by declining to discuss MCN's putative claims against Auburn in its Rule 19 analysis even had MCN done so.

MCN's argument also fails on the merits. Its assertion that there could be no prejudice from proceeding with claims against Auburn in PBCI's absence ignores the nature and statutory underpinnings of those claims. As discussed *supra*, the legal status of the subject property controls whether and how NAGRPA and ARPA, the

47

two statutes under which MCN now claims to proceed against Auburn, *see* Dkt. 31 at 57, apply in this case. If the property was not held in trust, but instead was owned by PBCI in fee, NAGPRA and ARPA would not apply at all. *See* 16 U.S.C. § 470cc(a) (limiting ARPA's applicability to "public lands or Indian lands"); 25 U.S.C. § 3002(a) (limiting NAGPRA's applicability to items found "on Federal or tribal lands"); *see generally* Dkt. 36 at 458-62, 468-71, 907-10, & 915-17.

Additionally, NAGPRA provides a ranked preference list for determining "ownership or control of Native American cultural items which are excavated or discovered on Federal or tribal lands." 25 U.S.C. § 3002(a). That list begins with lineal descendants[11] (in the case of remains and funerary objects) and then proceeds, "in any case in which such lineal descendants cannot be ascertained, and in the case of unassociated funerary objects, sacred objects, and objects of cultural patrimony" to "the Indian tribe … on whose tribal land such objects or remains were discovered" before falling to "the Indian tribe … which has the closest cultural affiliation with such remains or objects." 25 U.S.C. § 3002(a)(1)-(2)(B). Similarly, ARPA permitting regulations involve "the consent of the appropriate Indian tribal authority," 43 C.F.R. § 7.35(a), and incorporate a modified version of NAGPRA's

---

[11] For NAGPRA purposes, a "lineal descendant" is an "individual [who] trac[es] his or her ancestry directly … to a known Native American individual," 43 C.F.R. § 10.2(b)(1)—not a person or tribe who is culturally affiliated with or traces ancestry to a place where unknown individuals were interred, as the term is used throughout MCN's SAC and brief.

land status-based ranked preference list to identify that authority. 25 C.F.R. § 262.8(a).

At the subject property, the Poarch Band is the tribe "on whose tribal land" the excavation occurred, while MCN asserts the closest cultural affiliation with all excavated remains and artifacts. Accordingly, the trust status of the Wetumpka property would loom large in any litigation between MCN and Auburn over alleged NAGPRA or ARPA violations. It could determine what, if any, duties Auburn owes to MCN as well as the appropriate claimant of any artifacts in Auburn's custody. Leaving Auburn to litigate these matters without PBCI's involvement would obviously risk prejudice to PBCI's interests.

The relief that MCN seeks against Auburn underscores the risk for prejudice to PBCI and the propriety of dismissal under Rule 19. MCN seeks no declaratory relief or fees against Auburn. The only time that Auburn is mentioned in the SAC's entire, four-page prayer for relief is when MCN requests a permanent injunction requiring PBCI to restore the subject property "to the condition it was in prior to the construction of the casino resort and the Phase III excavation … and requiring … Auburn to fully cooperate to facilitate this process." Dkt. 36 at 127. When the only relief that PBCI seeks from Auburn is a permanent injunction requiring it to participate in the razing of PBCI's hotel-casino facility and restoration of PBCI's property to MCN's specifications, it is difficult to understand how MCN would

obtain that relief without prejudicing PBCI. And it is equally difficult to fathom how such relief could be shaped or modified to lessen the potential prejudice to PBCI or adequately awarded without PBCI being present or bound, *see* Rule 19(b)(2)-(3), two points on which MCN again fails to offer (and thus waives) any argument. *See* Dkt. 36 at 788-92.

As a result, MCN is left in the same position it found itself with respect to the federal defendants, arguing that its potential lack of an adequate remedy under Rule 19(b)(4) outweighs the other Rule 19(b) factors. That argument fails as to Auburn for the same reasons discussed *supra* regarding the federal defendants—*i.e.*, the potential prejudice of a litigant's lack of an adequate remedy cannot outweigh the prejudice of proceeding without the presence of a necessary but immune sovereign. *See, e.g.*, *Pimentel*, 553 U.S. at 872; *Fla. Wildlife*, 859 F.3d at 1320; *Jamul*, 974 F.3d at 996-98; *Dine Citizens*, 932 F.3d at 857; *N. Arapaho Tribe*, 697 F.3d at 1283-84.

MCN has waived, by failing to raise them here, below, or both, any potential challenges to the district court's dismissal of MCN's claims against the non-PBCI defendants on Rule 19 grounds. But even if it had not, it has fallen far short of establishing that the court below abused its discretion in dismissing those claims. The risk of plaintiffs being left without an adequate remedy is a natural and frequently unavoidable result of sovereign immunity, and it is well-settled that that

risk cannot outweigh the remaining Rule 19(b) factors when they support dismissal. This Court should affirm the district court's Rule 19 ruling.

## <u>CONCLUSION</u>

The district court correctly held that the Poarch Band's special sovereignty interests in its control of and jurisdiction over the subject property prevent MCN from proceeding with its official capacity claims against the Tribal Officials under *Ex Parte Young* and that the Poarch Band's tribal sovereign immunity thus bars MCN's claims against PBCI. It also correctly held, and certainly did not abuse its discretion in finding, that MCN's claims against the remaining defendants cannot proceed in equity and good conscience without PBCI and thus should be dismissed pursuant to Rule 19. This Court should affirm the dismissal of all MCN's claims.

Respectfully submitted this 20th day of September, 2023.

/s/ Mark H. Reeves
Mark H. Reeves
**Kilpatrick Townsend & Stockton LLP**
Enterprise Mill, Suite 230
1450 Greene Street
Augusta, GA 30901
Tel: (706) 823-4206
mreeves@kilpatricktownsend.com

Catherine F. Munson
**Kilpatrick Townsend & Stockton LLP**
701 Pennsylvania Ave, NW, Suite 200
Washington, D.C. 20004
Tel: (202) 824-1435

cmunson@kilpatricktownsend.com

Charles A. Dauphin
**Dauphin Paris, LLP**
300 Vestavia Pkwy, Suite 3700
Birmingham, AL 35216
Tel: (205) 979-6019
cdauphin@dauphinparis.com

*Attorneys for Defendants-Appellees*

## <u>CERTIFICATE OF COMPLIANCE</u>

1.     This document complies with the type-volume limit of Fed. R. App. P. 32(a)(7)(B) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 11,988 words.

2.     This document complies with the typeface requirements of Fed R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word for Microsoft 365 MSO (Version 2306 Build 16.0.16529.20226) 32-bit in 14-point Times New Roman font.

Dated: 09/20/2023                         /s/ Mark H. Reeves
                                          Mark H. Reeves

53

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on this 20th day of September, 2023, I electronically filed the forgoing Appellees' Brief with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all registered CM/ECF users.

/s/ Mark H. Reeves<u>                        </u>
Mark H. Reeves
